Filed 8/10/26  P. v. Superior Court (Meza) CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>SANTA CLARA COUNTY<br>SUPERIOR COURT,<br><br>　　　　Respondent;<br><br>LETINO REY MEZA,<br><br>　　　　Real Party in Interest. | H053759<br>(Santa Clara County<br>Super. Ct. No. F2300477) |

In this petition for writ of mandate (petition), the district attorney (petitioner) seeks reversal of the respondent superior court (trial court)'s order granting a motion to suppress evidence filed by real party in interest Letino Meza in Meza's prosecution for assault with a firearm.

Gilroy police officers arrested Meza after performing a warrantless stop following two separate calls to 911:  one call reporting an assault with a firearm by a group of gang-related individuals, and a second call one hour later reporting suspicious behavior in a nearby parking lot by a group of

possibly gang-related individuals wearing red clothing.  Meza was detained a few minutes after police officers arrived; he was walking in the direction that officers had reported seeing two subjects leaving the parking lot, was breathing heavily, and was wearing a red sweatshirt.

Following a preliminary hearing, Meza moved to suppress evidence pursuant to Penal Code[1] section 1538.5.  Meza argued he was unlawfully detained without reasonable suspicion.  The trial court granted the motion, finding there was not enough information "that [] probable cause existed justifying the stop."

Petitioner seeks reversal of the trial court's order suppressing evidence.  For the reasons explained herein, we conclude that petitioner has carried his burden of showing prejudicial legal error.  We therefore direct that a peremptory writ of mandate issue ordering the court to vacate its order granting the motion to suppress evidence and enter a new order denying the motion.

## I.  FACTS AND PROCEDURAL BACKGROUND

*A. Return in Response to Order To Show Cause*

We first address a preliminary issue related to the return on the order to show cause.

As explained further in the procedural history *post* (pt. I.C.), upon receipt of the petition, a preliminary opposition filed by Meza, and reply filed by the petitioner, this court issued an order to show cause and permitted real party in interest to file a return in opposition to the writ.  Meza did so.  The return in opposition to the writ (return) filed by Meza contains a verification by counsel attesting, on Meza's behalf, to the truth of the "facts and contents"

---

[1] Further unspecified statutory references are to the Penal Code.

2

included therein. However, the return does not attempt to respond to the formal allegations of the petition and primarily asserts legal arguments in the form of a memorandum of points and authorities. Thus, the return is neither a verified answer nor return by demurrer, as required by the applicable court rule. (Cal. Rules of Court, rule 8.487(b)(1); see also Code Civ. Proc., § 1089.) It is also unclear whether the verification is adequate under Code of Civil Procedure 446.

Courts deem the requirement of filing "a return by demurrer, verified answer, or both" (Cal. Rules of Court, rule 8.487(b)(1)) to be more than a technicality; it is "an integral and critical step in the procedure for determining the merit of a petition for extraordinary relief." (*Bank of America, N.A. v. Superior Court* (2013) 212 Cal.App.4th 1076, 1085 (*Bank of America*).)

As explained in a recent decision by a panel of this court, the appropriate remedy for failure to file a verified answer or demurrer and responsively address the verified allegations of the petition is to treat those well-pleaded and verified factual allegations in the petition as true. (*People v. Superior Court* (*Feghhi*) (2026) 120 Cal.App.5th 608, 615.) Courts often apply this remedy. (See, e.g., *ibid.*; *Dorsey v. Superior Court* (2015) 241 Cal.App.4th 583, 589; *Shaffer v. Superior Court* (1995) 33 Cal.App.4th 993, 996, fn. 2 (*Shaffer*).)

In this case, we agree with petitioner's proposal (in reply to the return) that, insofar as the return does not deny any of the petition allegations, this court accepts as true those well-pleaded and verified allegations of the writ petition. (*Bank of America, supra*, 212 Cal.App.4th at p. 1084; *Shaffer*, *supra*, 33 Cal.App.4th at p. 996, fn. 2.)

3

*B. Facts*

We accept the following, well-pleaded and verified allegations of the petition as true for purposes of our review. Facts are drawn from the reporter's transcript of the August 27, 2025 hearing on the motion to suppress in the trial court and the "911 CAD" (CAD)[2] admitted at the motion to suppress hearing. Petitioner has attached and incorporated by reference in the petition the CAD and the reporter's transcript of the suppression hearing.

On March 24, 2023, at 11:55 p.m., 911 received a call from the reporting party.[3] The reporting party stated that 30 minutes earlier (at approximately 11:25 p.m.), "gang-related" individuals approached her husband in a black Chevy Malibu at Church Street and First Street in Gilroy. The group members asked reporting party's husband "if he 'banged' " and pulled out a gun. They drove away, behind the grocery market and westbound through the back alleyway.

Approximately one hour later, on March 25, 2023, at 12:47 a.m., another reporting party called 911. The caller reported a group of six subjects in red clothing "trying to start trouble" in the rear parking lot of Bartenders Union on Monterey Street in Gilroy. The caller reported the subjects "might have a gun," though the caller did not see the gun.

---

[2] The petition refers to the "CAD" as a Computer Aided Dispatch log, though Meza notes in his return that there was no evidence offered at the hearing to define or explain the term "CAD." Nevertheless, consistent with the parties' briefing, we use the term "CAD" when referring to the dispatch log admitted as exhibit 1 to the motion hearing. (See *Ramirez v. Superior Court* (2023) 88 Cal.App.5th 1313, 1319, fn. 3 ["The term CAD commonly refers to the 'Computer-Aided Dispatch' system utilized by law enforcement to process, communicate, and respond to 911 calls."].)

[3] We refer to the victim and reporting party without using their names to protect their personal privacy interests. (See Cal. Rules of Court, rule 8.90(b)(4), (10).)

4

Daniel Pineda, a sergeant with the City of Gilroy, was dispatched to Bartenders Union. Pineda testified at the suppression motion hearing that the 911 call involved "a group of subjects in the parking lot . . . causing problems," "possibly gang related and wearing red clothing," and possibly "armed with a gun or a firearm." Pineda recalled that the 911 caller had reported there were six subjects in the parking lot.

Another police officer, Martin Del Campo, arrived at the scene before Sergeant Pineda and stated over the radio that he had observed a "subject" in a red sweater or red shirt place an unknown item into a nearby black vehicle and lock the vehicle. Officer Del Campo confirmed the vehicle was a black Chevy Malibu.

When Sergeant Pineda arrived at the parking lot, two other officers (Officers Rottman and Moon) were present and had detained two subjects. As Pineda began to exit his vehicle, the officers told him two other individuals had just walked away, using the walkway connecting the parking lot of Bartenders Union to downtown Gilroy. The officers told Pineda that the "[two] subjects [had] started walking northbound on Monterey."

Sergeant Pineda got back into his vehicle and drove northbound through the parking lot "to possibly contact" these individuals. At the same time, Officer Del Campo advised over the police radio that a firearm had been located in the black Chevy Malibu. As Pineda drove, he received communications from officers over the radio dispatch who were "actively monitoring the downtown cameras and [] advising . . . that they observed the subjects continuing northbound [on] Monterey and then eastbound at Martin

Street."[4]  Pineda continued toward the area in which the individuals were last seen and saw "a subject in a red sweater walking on the south sidewalk of Martin Street . . . – walking eastbound from Monterey Road."

Sergeant Pineda followed the person and observed, based on the rise and fall of his chest and shoulders, that the individual "appeared to be breathing heavily."  Pineda testified that, given the circumstances, including "the firearm that was located" in the black car and that "there was also another call that was pending regarding a brandishing involving a similar vehicle," specifically "a black Chevy Malibu," he conducted a "high-risk stop of the subject," later identified as Meza.

*C. Procedural History*

1. <u>Trial Court Proceedings</u>

Meza was held to answer following a preliminary hearing for assault with a firearm (§ 245, subd. (a)(2)), threats to commit a crime resulting in death or great bodily injury (§ 422, subd. (a)), and exhibiting a firearm for the benefit of a criminal street gang (§ 417, subd. (a)(2)).  The magistrate further found sufficient evidence to support the allegations that Meza committed the assault with a firearm and made the criminal threats for the benefit of the Norteño criminal street gang (§ 186.22, subd. (b)(1)(B)).  Petitioner filed an information conforming to the magistrate's holding order.

Meza filed a motion to suppress evidence pursuant to section 1538.5 (motion or suppression motion).  The motion challenged Meza's detention, as well as his subsequent arrest and the search of his person incident to that arrest.  It alleged that the police acted without a warrant, in violation of

---

[4] The CAD reflects that officers observed two subjects on camera, one wearing a red sweatshirt and one wearing a white sweatshirt, "run" eastbound on Martin.

6

Meza's reasonable expectation of privacy, and demanded suppression of the evidence obtained from the unlawful detention, arrest, and search and seizure.

Petitioner filed written opposition to the motion. With respect to Meza's detention, petitioner argued that the information available to Sergeant Pineda satisfied the standard for an investigative stop based on "reasonable suspicion that criminal activity is taking place and that the suspect may be connected to it." (Citing *Terry v. Ohio* (1968) 392 U.S. 1, 30.)

In August 2025, the trial court held a hearing on Meza's suppression motion. The court admitted the 911 CAD into evidence as exhibit 1. Defense counsel elected to narrow the scope of the suppression motion to the initial detention, and the court confirmed the narrowed scope of the motion.

Following Sergeant Pineda's direct testimony and cross-examination, petitioner informed the trial court that the prosecution would rest because petitioner's intended second officer witness was in transit and appeared to be unavailable.[5] The defense did not call any witnesses or present evidence.

In argument, petitioner's counsel reiterated the evidence arguably supporting the detention—including the reporting party's statement reflected in the CAD that the individuals causing the disturbance were gang related— and asserted it was sufficient to meet the reasonable suspicion standard. Meza's defense counsel countered that the information related to the two service calls and known to Sergeant Pineda prior to Meza's arrest was insufficient to create reasonable suspicion of a crime being committed. Defense counsel argued there was no description provided of the individuals associated with the brandishing, no evidence of a crime being committed in

---

[5] The writ record does not specify the identity of this intended witness.

the parking lot given that the service call did not report a crime but "some individuals who appeared to be looking for trouble," and no evidence of flight from the police "because there's no indication that [Meza] was told to stop or that he ran away." Defense counsel emphasized the lack of evidence connecting Meza to the car or the group in the parking lot and asserted that "all we can assume is maybe he was part of the troublemaking group, but it's another leap to suggest that he was involved in a brandishing or . . . in firearm possession when there's no specific observation of him in relation to either of those events."

In September 2025, the trial court made an oral ruling granting Meza's suppression motion. The court ruled there was insufficient justification for the stop and detention of Meza. It explained, "The court finds that, based on the testimony, there was insufficient cause to stop [Meza] for further reasons noted by the officer. The court acknowledges the red clothing. The court also acknowledges that when observed, [Meza] was panting, obviously out of breath. However, without more specific articulation and identification of the defendant the court is simply not left with much information upon which to conclude that the probable cause existed justifying the stop. As a result, this court finds that there was insufficient suspicion to stop the defendant for further investigation. I will note that this decision is based on the sole testimony of the officer."

The trial court ordered any evidence obtained from the stop, including any statements made by Meza, officer observations, and in-field identification, inadmissible in the prosecution against Meza.

2. Petition for Writ of Mandate

In October 2025, petitioner filed the instant petition, seeking a writ of mandate challenging respondent trial court's order on the grounds that the

8

court applied an incorrect legal standard to the suppression motion and failed to consider all the evidence. Meza filed an opposition to the petition and a request for judicial notice.

On February 18, 2026, this court denied Meza's request for judicial notice[6] and ordered respondent to show cause why petitioner is not entitled to the relief requested. As described *ante* (pt. I.A.), in response to this court's invitation to file a return in opposition to the writ, Meza filed a return that does not specifically respond to the petition allegations such that we treat as true the well-pleaded factual allegations of the petition. After the close of briefing in this matter, petitioner filed a new authorities letter pursuant to California Rules of Court, rule 8.254, related to the United States Supreme Court's recent decision in *District of Columbia v. R.W.* (2026) 608 U.S. __ [146 S.Ct. 1069] (*R.W.*).

## II. DISCUSSION

Petitioner asserts the trial court erred in granting Meza's suppression motion by applying the probable cause standard when determining the constitutionality of the detention and in failing to consider the admitted CAD exhibit. Meza responds that the court correctly applied the standard of reasonable suspicion and "simply misspoke" when it referenced probable cause in its ruling. Meza further argues there is no evidence that the court failed to consider the CAD, which in any event does not support a finding of reasonable suspicion.

---

[6] Meza's request sought judicial notice of a prior written ruling in a separate matter issued by the same judicial officer who ruled on Meza's suppression motion to establish the trial court's knowledge of the appropriate legal standard to be applied in a challenge to the lawfulness of a detention. In an order filed on February 18, 2026, this court denied the request for judicial notice because "the proffered material from a different case does not demonstrate whether the judge applied the correct standard here."

### A. Legal Principles and Standard of Review

" 'In California, issues relating to the suppression of evidence derived from governmental searches and seizures are reviewed under federal constitutional standards.' " (*People v. Macabeo* (2016) 1 Cal.5th 1206, 1212 (*Macabeo*).) "The Fourth Amendment permits brief investigative stops . . . when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.' " (*Navarette v. California* (2014) 572 U.S. 393, 396 (*Navarette*).) "The 'reasonable suspicion' necessary to justify such a stop 'is dependent upon both the content of information possessed by police and its degree of reliability.' " (*Id.* at p. 397.) "The standard takes into account 'the totality of the circumstances—the whole picture' " (*ibid.*) and "precludes the 'evaluation and rejection' of 'factors in isolation from each other.' " (*R.W.*, *supra*, 146 S.Ct. at p. 1070.) "Reasonable suspicion is a lesser standard than probable cause, and can arise from less reliable information than required for probable cause, including an anonymous tip. [Citation.] But to be reasonable, the officer's suspicion must be supported by some specific, articulable facts that are 'reasonably "consistent with criminal activity." ' " (*People v. Wells* (2006) 38 Cal.4th 1078, 1083 (*Wells*).)

Applying these standards, a suspect may be temporarily detained if an officer has a reasonable suspicion that criminal activity is taking place and that the suspect may be connected to it. (*Terry v. Ohio* (1968) 392 U.S. 1, 30; see *People v. Souza* (1994) 9 Cal.4th 224, 230 (*Souza*) ["[T]he temporary detention of a person for the purpose of investigating possible criminal activity may. . . be based on 'some objective manifestation' that criminal activity is afoot and that the person to be stopped is engaged in that activity."].) Reasonable suspicion may be established by "a moderate chance"

that criminal activity has been committed. (*Safford Unified School Dist. v. Redding* (2009) 557 U.S. 364, 371 (*Safford*).) It is sufficient that there exists a reasonable suspicion of criminal conduct, even if circumstances later prove the conduct to be innocent. (*Souza*, at p. 233.)

When reviewing a ruling on a motion to suppress, we " ' " 'defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment." ' " " (*Macabeo, supra*, 1 Cal.5th at p. 1212.)

*B. Analysis*

The parties agree on the applicable law and governing standard. There is no dispute that Sergeant Pineda acted without a warrant when he detained Meza, triggering the constitutional requirement of reasonable suspicion to conduct a brief, investigatory detention. (See *Navarette, supra*, 572 U.S. at pp. 396–397; *Wells, supra*, 38 Cal.4th at p. 1083.) The question presented is whether the trial court correctly applied that standard in deciding there was insufficient cause for Sergeant Pineda to have stopped Meza for further investigation, or whether the court erroneously applied the more rigorous, probable cause standard applicable to Meza's subsequent search and arrest (neither of which was challenged at the suppression motion hearing). (See *United States v. Sokolow* (1989) 490 U.S. 1, 7 [comparing concepts of "probable cause" and "reasonable suspicion"].)

In his return, Meza relies on the presumption that, absent evidence to the contrary, appellate courts "assume a trial court applied the correct legal standard." (*People v. Eubanks* (1996) 14 Cal.4th 580, 598 (*Eubanks*); see Evid. Code, § 664; *Ross v. Superior Court* (1977) 19 Cal.3d 899, 913.) Meza argues it is well established that reasonable suspicion is the appropriate test

11

by which to measure the constitutionality of a detention, and applying the presumption, "it is clear that [the r]espondent [c]ourt did not utilize the probable cause standard when evaluating" Meza's detention.

Meza is correct that we ordinarily presume the trial court's awareness and application of the governing legal standard. However, there is not an "absence of contrary evidence." (*Eubanks*, *supra*, 14 Cal.4th at p. 598.) Rather, the trial court's statement of its ruling and factual findings together rebut that presumption.

The trial court granted the suppression motion upon finding "insufficient cause" for Meza's detention. The court found that although the officer's testimony established facts including that Meza was wearing "red clothing" and was "panting, obviously out of breath," there was insufficient information for the court "to conclude that [] *probable cause* existed justifying the stop." (Italics added.)

In citing probable cause, the trial court specifically articulated an inapposite legal standard. The court's additional references to finding "insufficient cause" and "insufficient suspicion to stop the defendant for further investigation" do not suggest the court applied the correct standard. While the parties' briefing and argument on the motion properly referenced the reasonable suspicion metric, we are unable to conclude from the court's oral ruling that its reference to probable cause was inadvertent.

Moreover, the facts articulated by the trial court bolster our conclusion that the ruling—not merely the oral explanation given—was based on a misapplication of the governing law. This is not an instance in which we may affirm the court's correct decision regardless of the reasons given. (Cf. *People v. Brown* (2004) 33 Cal.4th 892, 901 [" ' "No rule of decision is better or more firmly established . . . than that a ruling or decision, itself correct in laws,

12

will not be disturbed on appeal merely because given for the wrong reason." ' "].)

The trial court's grant of the suppression motion included limited factual findings. The court's express findings—that Meza was wearing red clothing and was panting and out of breath—are not disputed by either side and are supported by substantial evidence based on Sergeant Pineda's testimony. We defer to these substantially supported findings. (*Macabeo*, *supra*, 1 Cal.5th at p. 1212.)

Although not articulated by the trial court, that Meza was out of breath also supports an implied finding that he had been running or jogging before Sergeant Pineda intercepted him. This finding is corroborated by the notation in the CAD, approximately two minutes before Pineda detained Meza, stating that two subjects (wearing, respectively, a red sweatshirt and white sweatshirt) were seen on camera running eastbound on Martin.[7] Moreover, this occurred shortly before 1:00 a.m. (not a common time for jogging) and only minutes after the second 911 call. Furthermore, Pineda apprehended Meza moving in the precise direction and location indicated by the two officers in the parking lot (describing two subjects walking away from the walkway connecting the parking lot to downtown "northbound on Monterey") and over the radio dispatch (by officers "actively monitoring

---

[7] Petitioner contends the trial court erred by failing to consider the admitted CAD exhibit. Meza disagrees with petitioner's interpretation of the record on this point. The record does not provide a definitive answer as to the extent to which the court considered the CAD evidence. In any event, we agree with petitioner that the admitted exhibit is appropriate for consideration by the fact finder as part of " 'the totality of the circumstances—the whole picture' " (*Navarette*, *supra*, 572 U.S. at p. 397) relevant to assessing reasonable suspicion.

13

downtown cameras" and advising Pineda by radio that they observed the subjects continuing northbound on Monterey and eastbound at Martin).

The totality of these facts, to which Sergeant Pineda testified at the suppression hearing, clearly support an inference that Meza was one of the two subjects seen leaving the parking lot (described by Officers Rottman and Moon) and was running, jogging, or walking quickly enough to leave him panting and out of breath. While these facts may not alone be sufficient to support an inference of reasonable suspicion, it is commonly observed that " 'unprovoked flight upon noticing the police . . . . is certainly suggestive' of wrongdoing." (*R.W.*, *supra*, 146 S.Ct. at p. 1072.)

Moreover, these were not the only factors Sergeant Pineda considered in deciding to make the warrantless stop. Pineda testified that as he approached Meza, he was aware of multiple circumstances, including that a firearm had just been located by Officer Del Campo in the black Chevy Malibu, in the parking lot from which Meza appeared to be fleeing, and that there was another 911 call pending "regarding a brandishing involving a similar vehicle."

Taken together with Meza's red sweatshirt, panting, and proximity to the location where two subjects were observed leaving the parking lot, these facts constitute "specific, articulable facts that are 'reasonably "consistent with criminal activity" ' " (*Wells*, *supra*, 38 Cal.4th at p. 1083) and established at least "a moderate chance" (*Safford*, *supra*, 557 U.S. at p. 371) that criminal activity had been committed and Meza was engaged in that activity (*Souza*, *supra*, 9 Cal.4th at p. 230).

Exercising our independent judgment, based on the facts cited by the trial court and supported by substantial evidence in the record (*Macabeo*, *supra*, 1 Cal.5th at p. 1212), we decide Meza's detention satisfied Fourth

14

Amendment principles of reasonableness when considered under the reasonable suspicion standard. The trial court's finding to the contrary, combined with its express reference to probable cause, establishes prejudicial error.

### III.  DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to vacate its September 11, 2025 order in case No. F2300477 granting real party in interest's motion to suppress evidence, and enter a new order denying said motion.

_____
Danner, J.

WE CONCUR:

_____
Greenwood, P. J.

_____
Grover, J.

**H053759**
***People v. Superior Court (Meza)***